# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| HARVEY LEIBIN, | : | |
| | : | |
| Plaintiff, | : | |
| | : | No. 3:08cv266 (MRK) |
| v. | : | |
| | : | |
| TOWN OF AVON et al., | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OF DECISION

Harvey Leibin, an architect and resident of Avon, Connecticut, has brought suit against the

Town of Avon; its Chief of Police, Mark Rinaldo; and three individual officers: Sgt. Kevin Fleming,

Officer Gilbert; and Officer Gary Cruz. Mr. Leibin's allegations arise from his arrest by Officer

Cruz at approximately 10:00 p.m. on April 13, 2007 for driving under the influence; he was also

charged with failing to drive in one lane. Mr. Leibin alleges that the arrest was without probable

cause, as evidenced by the subsequent breathalyzer and urine tests that showed that he had a .000%

blood-alcohol level ("BAC") and was not under the influence of drugs. Mr. Leibin's four-count

Amended Complaint asserts a § 1983 claim of false arrest against the three individual officers

(Count One); common-law malicious prosecution against the three individual officers (Count Two);

a *Monell* claim for the failure to train officers regarding DUI arrest procedures – in particular, how

to properly administer field sobriety tests ("FSTs") (Count Three); and a claim under Conn. Gen.

Stat. § 52-557n for Officer Cruz's alleged negligence in arresting Mr. Leibin on the basis of

unapproved and/or poorly-administered FSTs (Count Four). *See* Am. Compl. [doc. # 46].[1]

---

[1] The claims in Mr. Leibin's Amended Complaint [doc. # 46] contained other allegations, but he
dropped the other alleged bases of his claims in opposing summary judgment. *See* Pl.'s Mem. in

Now pending is the Defendants' Motion for Summary Judgment, in which they argue that there are no material facts in dispute and that they are entitled to judgment as a matter of law. *See* Defs.' Mem. in Supp. of Summ. J. [doc. # 49-1]. The Court held oral argument on the pending motion on May 27, 2010, and thereafter permitted the parties to supplemental the record on the issue of probable cause, which Mr. Leibin did. *See* Pl.'s Supplemental Mem. in Opp'n to Summ. J. ("Pl.'s Suppl. Mem.") [doc. # 71]. For the reasons that follow, the Court agrees that Defendants are entitled to summary judgment on Counts One and Three – the two federal claims – and the Court declines supplemental jurisdiction as to Counts Two and Four. *See* 28 U.S.C. § 1367(c).

## I.

The facts in this case are straightforward; unless otherwise indicated, those recited here are undisputed. At approximately 9:58 p.m. on April 13, 2007, an anonymous witness called the Avon Police Department to report what he or she believed was an intoxicated driver. The caller reported that the vehicle was "swerving all over the place," was "crossing over the double yellow lines" in the middle of the road, and had run a red light; the caller thought the driver was "going to lose it." *See* Tr. of 911 Call, attached to Whitty Aff. [doc. # 49-4]. The caller reported the appearance and license-plate number of the vehicle. *See id.* Officer Cruz was dispatched to the reported location, identified the vehicle in question by its appearance and plate number, and followed it for approximately 7/10ths of a mile. *See* Case Incident Rep. [doc. # 49-7] at 2.

After observing the vehicle cross the lane divider three times by as much as half of the vehicle's width, Officer Cruz signaled for the driver – Mr. Leibin – to pull over. *See id.* Mr. Leibin

Opp'n to Summ. J. [doc. # 54-2].

pulled off the road on the right, and though there was virtually no traffic on the multi-lane road, he drove his vehicle up onto the curb, coming to a stop with at least the passenger-side tires on the grass.  *See id.* at 2.  Officer Cruz states that when he asked Mr. Leibin to exit the vehicle, Mr. Leibin had difficulty unlocking the door, *see* Case Incident Rep. [doc. # 49-7] at 2, which Mr. Leibin admits, though he explains that he had recently purchased the vehicle, and therefore it was unfamiliar to him, *see* Leibin Dep. [doc. # 71-1] at 30.  Officer Cruz reported a faint smell of alcohol at his initial approach, though Mr. Leibin disputes that this was possible; though Mr. Leibin admits (and admitted to Officer Cruz on the scene) that he had a glass of wine with dinner, *see id.*, he says that he brushed his teeth afterwards and therefore Officer Cruz could not have smelled alcohol, see Pl.'s Local Rule 56(a)2 Statement [doc. # 54-2] at 3 ¶ 7.  Mr. Leibin also admits putting a piece of gum in his mouth as he exited the vehicle, *see id.* at 24 (explaining that he did so because it was a "nervous habit"), which Officer Cruz took as an attempt to mask the smell of alcohol, *see* Case Incident Rep. [doc. # 49-7] at 2.  According to Officer Cruz, Mr. Leibin's eyes appeared glassy and slightly red, which Mr. Leibin seems to admit.  *See id.* at 1 ¶ 9; Leibin Dep. [doc. # 71-1] at 55. Though the record is unclear as to whether Mr. Leibin actually admitted to swerving out of his lane during the night in question, Mr. Leibin did tell Officer Cruz that he had been having trouble with his cell phone, and that this could have been the reason for his lane change violations.  *See* Pl.'s Local Rule 56(a)2 Statement [doc. # 54-2] at 2 ¶ 13.

After Mr. Leibin exited the vehicle, Officer Cruz administered four FSTs.  First was the Horizontal Gaze Nystagmus (HGN) test.[2]  Officer Cruz reports that this test indicated "distinct

---

[2] "The horizontal gaze nystagmus test measures the extent to which a person's eyes jerk as they follow an object moving from one side of the person's field of vision to the other. The test is premised on the understanding that, whereas everyone's eyes exhibit some jerking while turning to

nystagmus" in both eyes and "slight jerkiness prior to 45 degrees," which he interpreted as a sign of intoxication. *See* Case Incident Rep. [doc. # 49-7] at 3. Mr. Leibin, however, argues that given that he had no alcohol in his system, this was impossible, and that Officer Cruz either administered the test negligently or falsely reported its results. *See* Pl.'s Mem. in Opp'n to Summ. J. [doc. # 54] at 6. Next was the One-Leg Stand,[3] during which, the parties agree, Mr. Leibin dropped his foot at least once, *see* Pl.'s Local Rule 56(a)2 Statement [doc. # 54-2] at 2 ¶ 16, although Mr. Leibin has since said that the test was improperly administered, *see* Pl.'s Aff. [doc. # 71-3] ¶ 6. Officer Cruz then administered the Walk and Turn test,[4] which Mr. Leibin passed. *See* Pl.'s Local Rule 56(a)2 Statement [doc. # 54-2] at 3 ¶ 17. Last was the Alphabet Test; much of the parties dispute centers on this test and the HGN test. The parties agree that Mr. Leibin missed at least one letter (Officer Cruz says three), *see id.* at 3 ¶ 18, but the dispute is primarily about the fact that the Alphabet Test is no longer approved by the National Highway Traffic Safety Administration (NHTSA) as a reliable FST, reportedly because of a high rate of false positives. *See* Nowaczyk Dep. [doc. # 49-8] at 33-34.

Following the FSTs, Mr. Leibin was placed under arrest for driving under the influence and transported to the Canton Police Department. *See* Case Incident Rep. [doc. # 49-7] at 3. There, an Intoxilyzer (breathalyzer) test was administered, which resulted in a reading of .000 BAC. *See* Intoxilyzer Test Results [doc. # 54-6]; Pl.'s Local Rule 56(a)2 Statement [doc. # 54-2] at 2 ¶ 20.

---

the side, when the subject is intoxicated the onset of the jerking occurs after fewer degrees of turning, and the jerking at more extreme angles becomes more distinct." *State v. Popeleski*, 291 Conn. 769, 770 n.3 (2009) (quotation marks omitted).

[3] "The one leg stand test requires the subject to stand on one leg with the other leg extended in the air for [thirty] seconds, while counting aloud from [one] to [thirty]." *Popeleski*, 291 Conn. at 771 n.5.

[4] "The walk and turn test requires the subject to walk heel to toe along a straight line for nine paces, pivot, and then walk back heel to toe along the line for another nine paces. The subject is required to

After the Intoxilyzer test results were obtained, Mr. Leibin was asked to provide a urine sample, which he did, *see id.* ¶ 21, though the results were not available for some weeks later. Thereafter, Mr. Leibin was transported to the Avon Police Department to complete paperwork; he was released on a $250 non-surety bond and transported home by Officer Cruz later that same night. *See* Case Incident Rep. [doc. # 49-7] at 4.

The first results of the urine test, showing a .000% BAC, were not received until May 1, 2007 – two weeks after Mr. Leibin's arrest. *See* Pl.'s Local Rule 56(a)2 Statement [doc. # 54-2] at 2 ¶ 21. An unspecified time later, lab tests revealed that there were no drugs present in the urine, either. *Id.* ¶ 22.

On May 23, 2007, Mr. Leibin responded to the summons by appearing in Superior Court in Hartford with an attorney. After waiting approximately 20 minutes, his case was called. After asking the State's Attorney about the drug test results, the judge dismissed both charges of driving under the influence of alcohol, in violation of Conn. Gen. Stat. § 14-227a, and failing to drive in a single lane, in violation of Conn. Gen. Stat. § 14-236. *See* Leibin Dep. [doc. # 71-1] at 58-59. Mr. Leibin was never charged with using a handheld phone while operating a motor vehicle, which is prohibited by Conn. Gen. Stat. § 14-296aa.

## II.

The standard for considering a motion for summary judgment is a familiar one. The purpose of summary judgment is not to resolve factual disputes, but rather to see if there *are* any facts material to a claim that remain in genuine dispute, which only a jury can resolve. Accordingly, summary judgment is appropriate only when "the pleadings, the discovery and disclosure materials

---

count each pace aloud from one to nine." *Popeleski*, 291 Conn. at 771 n.5.

on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quotation marks omitted).  "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'"  *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986), and the Court must resolve all ambiguities and draw all inferences in favor of the nonmoving party, *see Anderson*, 477 U.S. at 255; *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008).  If the moving party carries its burden, the party opposing summary judgment "may not rely merely on allegations or denials."  Fed. R. Civ. P. 56(e)(2).  Rather, the opposing party must "set out specific facts showing a genuine issue for trial."  *Id.*  In short, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249-50 (citations omitted).

### III.

The Second Circuit has advised that the probable-cause inquiry:

> is an objective one that focuses on the facts available to the arresting officer at the time of the arrest.  Probable cause exists when, based on the totality of

6

circumstances, the officer has knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested.

*Finigan v. Marshall*, 574 F.3d 57, 61-62 (2d Cir. 2009) (quotation marks and citations omitted). The existence of probable cause, moreover, is determined objectively, and does not take into account the subjective motivations of the arresting officer. *See, e.g.*, *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004).

Requiring officers to have probable cause, however, does not require them to "have proof of each element of a crime" or to "negate any defense before [making] an arrest." *Finigan*, 574 F.3d at 63. Indeed, "[o]nce officers possess facts sufficient to establish probable cause, they are neither required nor allowed to sit as prosecutor, judge or jury. Their function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence." *Id.* (quoting *Krause v. Bennett*, 887 F.2d 362, 372 (2d Cir. 1989) (alteration in original)). Thus, to be entitled to summary judgment on a false arrest claim on the basis of probable cause, "[t]he facts available at the time of the arrest need only cause a person of reasonable caution to believe that a crime had been or was about to be committed." *Id.* Even if the "facts supporting probable cause to arrest are ultimately found not to have existed," an officer may still be entitled to qualified immunity on the basis of "'arguable probable cause,' which requires that he or she show that it was objectively reasonable to believe that probable cause existed or that 'officers of reasonable competence could disagree on whether the probable cause test was met.'" *Id.* at 61 (quoting *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004)).

The parties are also in agreement that if Officer Cruz had probable cause to arrest Mr. Leibin, that would be a complete defense to both the false arrest claim (Count One) and the *Monell* claim

(Count Three). *See, e.g.*, *Curley v. Village of Suffern*, 268 F.3d 65, 71 (2d Cir. 2001) ("[A] municipality cannot be liable for inadequate training or supervision when the officers involved in making an arrest did not violate the plaintiff's constitutional rights." (citing *Amato v. City of Saratoga Springs*, 170 F.3d 311, 320 (2d Cir. 1999)); *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) ("The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under Section 1983.") (citations and quotation marks omitted).

In this case, Defendants argue that the undisputed facts – in particular, the anonymous 911 call reporting Mr. Leibin's erratic driving; Officer Cruz's personal observation of the same erratic driving; Mr. Leibin driving up onto the curb when he pulled over; difficulty opening the door; his glassy, red eyes; faint odor of alcohol; placing a piece of gum in his mouth; the admission on the night in question that he had had a glass of wine with dinner; and his failure to pass the HGN, One-Leg Stand and Alphabet FSTs – all establish that Officer Cruz had probable cause to arrest Mr. Leibin for driving under the influence of drugs or alcohol, in violation of Conn. Gen. Stat. § 14-227a. The Court agrees.

Mr. Leibin does not seem to argue that the above-recited facts, if established, would have given Officer Cruz probable cause to arrest him. Rather, in his initial opposition to summary judgment, he asserted that two of these material facts are in dispute, thereby precluding summary judgment. *See* Pl.'s Mem. in Opp'n to Summ. J. [doc. # 54] at 6-7. In particular, Mr. Leibin disputed Officer Cruz's claim that he smelled alcohol on Mr. Leibin's breath and that the HGN test was properly-administered and/or truthfully reported.[5] *See id.* When the Court permitted the parties to

---

[5] Mr. Leibin also challenges Officer Cruz's use of the non-approved Alphabet FST, *see id.* at 7,

supplement the record with regard to probable cause, however, Mr. Leibin supplemented his arguments on these two facts and additionally sought to dispute Officer Cruz's contention that he had personally observed Mr. Leibin driving erratically and the import of several of the other factors. *See* Pl.'s Suppl. Mem. [doc. # 71].

However, there are two fatal flaws to Mr. Leibin's arguments: first, there is virtually no evidence in the record suggesting that the facts he challenges actually *are* in dispute; and second, even for those facts that Mr. Leibin may raise a colorable argument of disputes, they are not material, because even assuming the facts as Mr. Leibin claims, Officer Cruz still would have had probable cause.

## A.

In regards to certain facts – in particular, driving his vehicle up onto the curb and grass when he pulled over and his initial difficulty opening the driver's side door when Officer Cruz asked him to exit the automobile – Mr. Leibin argues that both have innocent explanations. Regarding his pulling onto the curb despite the absence of traffic in the multi-lane highway, Mr. Leibin explains that this "was simply a reasonable effort to parking safely in an area that would pose no hazard to other drivers or to the police who he initially believed at the time were purs[u]ing someone else." Pl.'s Suppl. Mem. [doc. # 71] at 4-5. That may very well be true, and for purposes of the motion for summary judgment, the Court assumes it is. But when evaluating whether a particular factor supports probable cause, the question is not whether there may have been an innocent explanation for the behavior in question. *See Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) ("[T]he fact that an innocent explanation may be consistent with the facts alleged . . . does not negate probable

---

though it is not clear what effect Mr. Leibin believes this has on the probable cause analysis, if any.

cause.") (citation omitted, second alteration in original). Instead, in this situation, the question is whether a reasonably-prudent police officer would believe that the perceived behavior would support the belief that Mr. Leibin was driving while intoxicated. *See Finigan*, 574 F.3d at 61-62. The answer to that question is clearly yes, particularly in light of Mr. Leibin's deposition testimony that traffic "was virtually nonexistent" when he pulled over and that he had "rarely ever seen [that] road so empty" even though he drives it "every day." Leibin Dep. [doc. # 71-1] at 22; *see also id.* at 25 (testifying that the highway has two lanes going in each direction and a turn lane in the middle); *id.* at 27 (testifying that when Mr. Leibin pulled over "the road was empty, in both directions"); Pl.'s Local Rule 56(a)2 Statement at [54-2] at 1 ¶¶ 5-6.

The same reasoning applies to Mr. Leibin's explanation of why he had trouble finding the automatic door look when attempting to exit the vehicle – i.e., that it was a new car, and therefore he was unfamiliar with it. *See* Leibin Dep. [doc. # 71-1] at 30. Unless Officer Cruz had knowledge of that fact (and there is no evidence that he did), it does nothing to undermine Officer Cruz's reasonable inference that difficulty exiting one's own vehicle is a factor supporting the belief that the driver is impaired. *See Zellner v. Summerlin*, 494 F.3d 344, 370 (2d Cir. 2007) ("'Probable cause existed if *at the moment the arrest was made* . . . the facts and circumstances *within the [officers']* *knowledge* and of which they *had reasonably trustworthy information* were sufficient to warrant a prudent man in believing that [the suspect] had violated' the law.") (quoting *Hunter v. Bryant*, 502 U.S. 224, 228 (1991) (emphasis and alterations in original)).

In support of the proposition that Officer Cruz could not have smelled alcohol, Mr. Leibin initially argued only that he had brushed his teeth following dinner – during which he consumed a glass of wine, *see* Leibin Dep. [doc. # 71-1] at 30 – and before the traffic stop, and therefore it was

impossible for Officer Cruz to have smelled alcohol. *See* Pl.'s Local Rule 56(a)2 Statement [doc. # 54-2] at 3 ¶ 8. To say that this is a thin reed upon which to create an issue of material fact would be charitable. In his supplemental memo, Mr. Leibin also argues that it was impossible for Officer Cruz to have smelled alcohol because Mr. Leibin subsequently registered a .000% BAC on the breathalyzer test. This, too, does not prove what Mr. Leibin asserts – that it was impossible for Officer Cruz to have smelled alcohol. At most, it establishes that Mr. Leibin did not have any alcohol in his blood; it does prove that it was impossible for Officer Cruz to have detected the smell of alcohol, whatever its source, or that Officer Cruz at least *thought* that he did.

Mr. Leibin's arguments regarding the HGN test – that the test was either wrongfully administered or its results were misreported – are of a similar quality. In support of these possibilities, Mr. Leibin argues that it was simply not possible for him to fail a properly-administered HGN test with a BAC of .000%. For support, Mr. Leibin presents the testimony of his expert, Dr. Ronald Nowacyk. In his two-page report, Mr. Nowacyk stated that:

> The 6 cues in the HGN should not have occurred if Mr. Leibin had a BAC of .00. The test is purported by NHTSA to be one that individuals cannot practice and that it is a neurological test that measures [central nervous system] depression (which alcohol would cause). I believe the test was not administered properly, unless Mr. Leibin has some underlying neurological problem that would cause him to fail the HGN when sober.

Nowacyk Report [doc. # 54-3] at 1; *see also id.* at 2 ("[F]ailing the HGN totally . . . is not consistent with someone who has a BAC of .00."). At oral argument, counsel for Mr. Leibin forcefully pressed the argument that the HGN is so reliable, in fact, that the only possible explanations for the outcome here are that Officer Cruz lied about the results or negligently administered the test.

But here again the record belies Mr. Leibin's contention, and for several reasons. First, Mr. Leibin has not presented any evidence or argument regarding whether he has an underlying

neurological problem that would cause him to fail a test that measures central nervous system depression – a possibility explicitly countenanced by Dr. Nowacyk's report. *See* Nowacyk Report [doc. # 54-3] at 1. While Mr. Leibin presented an affidavit with his supplemental memo stating in conclusory fashion that he "suffer[s] from no neurological impairment," *see* Leibin Aff. [doc. # 71-3], Mr. Leibin has presented no evidence from which the Court can evaluate this bald assertion from Mr. Leibin. At most, Mr. Leibin's affidavit can be read to say that he has never been *diagnosed* with a neurological impairment, but it does not even say whether Mr. Leibin – who is, after all, an architect, and not a doctor – has ever been *evaluated* in that regard. Relatedly, and as Mr. Leibin himself points out, an unspecified portion of the population has a natural nystagmus, *see* Pl.'s Local Rule 56(a)2 Statement [doc. # 54-2] at 4 ¶ 11, and yet Mr. Leibin has presented no evidence from which a jury could conclude that he is not one of those individuals. *See also* Nowacyk Dep. [doc. # 49-8] at 22 (testifying that there are "multiple causes" of nystagmus).

Second, Dr. Nowacyk confirmed that government research indicates that test subjects had "distinct nystagmus" in one or both eyes after being awake for an average of just 11.2 hours – in other words, that fatigue can also cause an individual to fail the HGN test even absent any level of intoxication. *See* Nowacyk Dep. [doc. # 49-8] at 17-18. In his deposition, Mr. Leibin testified that his day prior to being arrested had been a busy one – indeed, that it had been a busy week – and that at the time he was arrested, he was tired from having been awake for approximately 17 hours straight. *See* Leibin Dep. [doc. # 71-1] at 21-22.

Here again, Mr. Leibin introduces his affidavit in an effort to impugn the import of this admitted fact, stating that "[a]t no point during this incident was I too tired to drive competently and I never represented otherwise to Officer Cruz." Leibin Aff. [doc. # 71-3] ¶ 7. But even were the

Court to credit Mr. Leibin's self-serving affidavit – and it does not in some respects for the reasons noted below – this particular statement is beside the point. Dr. Nowacyk did not testify that individuals who felt that they were "too tired to drive competently" displayed "distinct nystagmus" in one or both eyes; rather, he testified that subjects who had been awake for an average of 11.2 hours – a threshold that Mr. Leibin admits he had exceeded by a good half-dozen hours, *see* Pl.'s Local Rule 56(a)2 Statement [doc. # 54-2] at 2 ¶ 11 – displayed nystagmus. *See* Nowacyk Dep. [doc. # 49-8] at 17-18. Mr. Leibin's self-reporting that he was not "too tired to drive competently" on the night in question, therefore – even assuming such a statement is accurate three-and-a-half years after the fact – does nothing to weaken the causal link between fatigue and nystagmus to which Mr. Leibin's own expert testified. *See id.*

For the above-cited reasons and more, Dr. Nowacyk testified during his deposition that the HGN test has a high rate of false positives even when officers are well trained, and is, in fact, "probably the most difficult one for a police officer to give." *Id.* at 16-17. And yet, it is well-established that "a mistake about relevant facts . . . does not undermine the existence of probable cause." *Williams v. Town of Greenburgh*, 535 F.3d 71, 79 (2d Cir. 2008); *cf. United States v. Jenkins*, 452 F.3d 207, 212 (2d Cir. 2006) ("The constitutional validity of a stop is not undermined simply because the officers who made the stop were mistaken about relevant facts."). Nonetheless, Mr. Leibin has provided no evidence whatsoever to rule out the possibility that his failure of the HGN test was caused by an underlying neurological disorder; fatigue; one of the other causes of nystagmus; or that Officer Cruz was simply mistaken in perceiving nystagmus.

While the Court is unaware of the likelihood that Mr. Leibin suffers from some other condition that would cause Officer Cruz to perceive nystagmus, it is Mr. Leibin's burden in opposing

summary judgment to produce evidence from which a reasonable jury could find in his favor. This he has not done. Instead, Mr. Leibin would have a jury speculate that either he did *not* suffer from one or more other causes of nystagmus or that Officer Cruz was simply lying about what he perceived (without giving any reason to think that Officer Cruz *would* lie about that). In other words, while Mr. Leibin may have created "some metaphysical doubt" as to the whether the HGN test was properly-administered and/or truthfully reported, it is axiomatic that more is required to defeat summary judgment. *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. Mr. Leibin's failure to produce this type of evidence is reason alone to hold that he has not created a genuine dispute regarding the results of the HGN test, thereby entitling Defendants to summary judgment. *See Anderson*, 477 U.S. at 249-50 ("If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.") (citations omitted).

**B.**

There is an even better reason to grant Defendants summary judgment. For even taking out those facts that Mr. Leibin claims are in dispute – Officer Cruz smelling alcohol and the results of the HGN FST, and even the Alphabet Test – there was still probable cause to arrest Mr. Leibin for driving under the influence. Those facts that Mr. Leibin agrees are not in dispute are as follows: the timing and contents of the anonymous 911 call; Officer Cruz's personal observation of Mr. Leibin's failure to drive in one lane; Mr. Leibin driving onto the curb when pulling over; his difficulty opening the driver's-side door, glassy eyes, admission to drinking wine with dinner and placing a piece of gum in his mouth; and Mr. Leibin's failure of the One-Leg Stand FST. *See* Pl.'s Local Rule 56(a)2 Statement [doc. # 54-2] (admitting the aforementioned facts). Courts routinely find comparable circumstances warrant a finding of probable cause to arrest for driving under the

influence.  *See, e.g.*, *Otero v. Town of Southampton*, 59 Fed. Appx. 409, 410-11 (2d Cir. 2003) (summary order); *Callum v. Marsh*, No.3:02CV57, 2005 WL 752213, at *6 (D. Conn. Mar. 31, 2005); *Colon v. Tucciarone*, 3:02CV891(PCD), 2002 WL 32502105, at *2 (D. Conn. June 2, 2002) ("Plaintiff's admission of drinking, odor of alcohol, glassy eyes, slurred speech, and failure of the horizontal gaze nystagmus field sobriety test are sufficient to warrant Defendant [officer's] reasonable belief that Plaintiff was operating his vehicle in violation of § 14-227(a)."); *Newby v. Town of Cromwell*, 25 F. Supp. 2d 56, 58 (D. Conn. 1998) (finding probable cause to arrest where plaintiff admits to drinking, smells of alcohol, displays glassy and red eyes, and fails at least one field sobriety test, despite plaintiff's later passing two breathalyzer tests); *Bulanov v. Town of Lumberland Constable Meehan*, No. 00CV4292, 2002 WL 181365, at *5 (S.D.N.Y. Feb. 6, 2002); *State v. Royce*, 29 Conn. App. 512, 518 (1992) ("The issue of the validity of the horizontal gaze nystagmus test, including whether the condition resulted from some congenital defect or from the defendant's ingestion of alcohol, may be relevant when the issue of the defendant's guilt or lack thereof is determined.  It is not, however, a proper issue to be used to negate the existence of probable cause when the evidence is examined from the viewpoint of the knowledge of the arresting officer.  A determination of the existence of probable cause does not and cannot turn on other evidence that may be produced at some later time in an attempt to explain away the evidence used by the officer for concluding that he had probable cause to arrest the defendant.") (citation omitted).

In his supplemental brief, Mr. Leibin attempts for the first time to create an issue of material fact regarding whether Officer Cruz personally observed Mr. Leibin driving erratically and whether the One-Leg Stand FST was properly administered.  *See* Pl.'s Suppl. Mem. [doc. # 71] at 2-3, 5-6. Mr. Leibin fails to create a genuine dispute about either.  First, and most significantly, Mr. Leibin

admitted in his Local Rule 56(a)2 Statement the very issues that he now wishes to argue are disputed. *See* Pl.'s Local Rule 56(a)2 Statement [doc. # 54-2] at 1 ¶ 4 & 2 ¶ 16. At this stage, Mr. Leiben cannot withdraw his admissions.

But even were the Court to ignore these admissions, the result is the same. Officer Cruz testified at his deposition that after being informed by the dispatcher of the 911 report of a potentially-intoxicated driver, he observed the vehicle in question, driven by Mr. Leibin, and began following it for approximately half a mile. *See* Cruz Dep. [doc. # 71-4] at 35. Officer Cruz testified that he personally "observed the vehicle crossing the broken white lane divider and return to the established lane three separate times." *Id.* at 36; *see also id.* at 37 ("[A]ll three of these times the driver's side tires crossed with one-quarter to one-half of the vehicle crossing the lane divider."). Only after making these observations did Officer Cruz activate his overhead lights, signaling to Mr. Leibin to pull over. *See id.* at 37; *see also* Case Incident Report [doc. # 49-7] at 2; Leibin Dep. [doc. # 71-1] at 53-54]. Officer Cruz's deposition testimony was also entirely consistent with the report that he wrote on the night of Mr. Leibin's arrest. *See* Case Incident Report [doc. # 49-7] at 2.

In an effort to contradict Officer Cruz's testimony regarding his personal observations, Mr. Leibin relies on his own affidavit. *See* Leibin Aff. [doc. # 71-3]. The affidavit was submitted with his supplemental memo and is dated August 2, 2010 – that is, after oral argument. *See id.* Although Mr. Leibin's admits in his affidavit that he did "change[] lanes at some point to the left turning lane and then moved back to the center lane," *id.* ¶ 3, and, moreover, that he previously "testified to reaching for a cell phone device while driving," he asserts in wholly conclusory fashion that these actions "occurred prior to being followed by Officer Cruz," and that "at no point while being observed by [Officer Cruz] did I cross the center lane." *Id.* ¶ 4. Moreover, Mr. Leibin's argument

concludes, since the identity of the 911 caller was not known and his or her report could not be independently verified, Officer Cruz could not have relied on it to establish probable cause either, and therefore Officer Cruz did not have probable cause to believe that Mr. Leibin was either driving while intoxicated or had failed to drive in a single lane. *See* Pl.'s Suppl. Mem. [doc. # 71] at 2-3.

Mr. Leibin's belated affidavit is wholly insufficient to create a genuine dispute regarding what Officer Cruz observed. For one, it entirely conclusory and contradicted by the material facts to which he has already admitted, *see* Pl.'s Local Rule 56(a)2 Statement at 1 ¶ 4 (admitting that Officer Gary Cruz followed the vehicle for approximately 7/10ths of a mile observing it cross the broken white divider line three times. Approximately ¼ - ½ of the vehicle crossed the divider line each time."). For another, the affidavit is necessarily either (a) not made on personal knowledge; or (b) it contradicts Mr. Leibin's own deposition testimony. Either way, it is inadmissible.

It is well-settled in the Second Circuit that "a party who has testified to a given fact in his deposition cannot create a triable issue merely by submitting his affidavit denying the fact." *Palazzo v. Corio*, 232 F.3d 38, 43 (2d Cir. 2000). Indeed, "if a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Id.* (quoting *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969)); *see also Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996) ("[F]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial") (quoting *Perma Research*, 410 F.2d at 578)). Similarly, "[o]n summary judgment, '[a] supporting or opposing affidavit must be made on personal knowledge,'" *Hicks v. Baines*, 593 F.3d 159, 167 (quoting Fed. R. Civ. P. 56(e)(1)), a requirement not met when

the statements are supported merely by one's own beliefs or inadmissible hearsay, *see id.*; *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 138 (2d Cir. 2009).

In his affidavit, Mr. Leibin's assertion that Officer Cruz did not witness him swerving out of his own lane must, to be admissible under Rule 56(e)(1), be based on Mr. Leibin's own personal observations. *See Hicks*, 593 F.3d at 167. Yet, in his deposition, Mr. Leibin, when asked when he "first realize[d] that there was a police officer following" him, answered that it was "[w]hen [Officer Cruz] turned on his lights." Leibin Dep. [doc. # 71-1] at 22; *see also id.* at 53 ("He said he saw me, pulled out and followed [me], four or five car lengths [behind]. I did not know he was behind me."). With regard to his admission to swerving at one point from one lane to the other, Mr. Leibin testified as follows:

> Question: Do you recall how many lanes there were where you were pulled over?
>
> Mr. Leibin: There's two drive lanes and there's a left turn lane at the intersection of 167.
>
> Question: Were you in the left turn lane when you pulled over?
>
> Mr. Leibin: When I approached the intersection – when I usually drive home on Route 44, I either turn at the Route 10 intersection by O'Neill's to go up Country Club Road and go home, or if there isn't a left turn arrow then, I will go down further and oftentimes turn on to Dale Road, which is just before 167.
>
> Question: Okay.
>
> Mr. Leibin: Just out of force of habit, I started going over into the left turn lane to turn on to Dale Road and then I remembered I had to go drop off the plates to my daughter in Canton, so I went back into the other lane.
>
> Question: That's the right hand lane? You're motioning.
>
> Mr. Leibin: I can't remember if it was the right hand. I think it was the center lane. *And that's when he turned on his lights to stop me.*
>
> Question: Are you at the center lane at Route 44 at the intersection of Dale Road?

Mr. Leibin:  Yeah, I went from the left lane to turn on to Dale Road back over into the center lane.

*Id.* at 25-26 (emphasis added).

Read most naturally, Mr. Leibin's above-quoted deposition testimony directly contradicts the assertion in his affidavit that Officer Cruz did not witness Mr. Leibin changing lanes; if that is the case, the affidavit is insufficient to create a genuine issue of material fact. *See Palazzo*, 232 F.3d at 43; *Perma Research*, 410 F.2d at 578. Read extremely charitably, on the other hand, it is *possible* that the above-quoted testimony does not contradict Mr. Leibin's affidavit, at least directly. However, if that is the case, then his affidavit was not made on personal knowledge, and is therefore inadmissible under Rule 56(e)(1), *see Hicks*, 593 F.3d at 167, as Mr. Leibin clearly testified that he was unaware that Officer Cruz was following him until the flashing lights were turned on. *See* Leibin Dep. [doc. # 71-1] at 22, 53. Thus, either way, Mr. Leibin has failed to create a genuine issue of material fact regarding what Officer Cruz observed. *See* Fed. R. Civ. P. 56(e)(1).

Moreover, insofar as Mr. Leibin attacks the use of the anonymous tip as a factor in the probable cause analysis, *see* Pl.'s Suppl. Mem. [doc. # 71] 2-3, he overstates his case. Mr. Leibin is certainly correct that Officer Cruz could not have relied solely on the report of the anonymous 911 caller to establish probable cause or even reasonable suspicion that Mr. Leibin had committed an offense. *See Florida v. J.L.*, 529 U.S. 266, 268 (2000); *United States v. Elmore*, 482 F.3d 172, 179-80 (2d Cir. 2007). But that does not mean that the tip cannot form *part* of the probable-cause analysis if Officer Cruz subsequently verified at least material portions of the caller's statement through his own personal observations. *See, e.g.*, *Elmore*, 482 F.3d at 179. In other words, simply because a tip is anonymous does not mean it can never be a factor supporting probable cause. Instead, the law requires that the information be "sufficiently corroborated" before it can support

either reasonable suspicion or probable cause. *See id.* ("Even a tip from a completely anonymous informant . . . can form the basis of reasonable suspicion or probable cause if it is sufficiently corroborated.").

Here, the anonymous tip was sufficiently corroborated by Officer Cruz to be considered in the probable-cause calculus. The 911 caller identified the type of vehicle being driven (an SUV), that it was dark-colored, the license-plate number, its location and the direction it was heading, and stated that the driver had run a red light and was failing to drive in a single lane. *See* Tr. of 911 Call, attached to Whitty Aff. [doc. # 49-4]. It is undisputed that the dispatcher relayed this information to Officer Cruz, *see* Pl.'s Local Rule 56(a)2 Statement [doc. # 54-2] at 1 ¶¶ 2-3, and as discussed above, Officer Cruz verified the location, heading, type and color of the vehicle, and he personally observed Mr. Leibin failing to drive in a single lane. *See* Cruz Dep. [doc. # 71-4] at 34-37. Accordingly, the anonymous tip could be considered as *part* of the totality of circumstances supporting probable cause. *See Elmore*, 482 F.3d at 179. Taken as a whole, and as discussed above, these circumstances supported probable cause.

In sum and substance, Mr. Leibin's argument seems to boil down to an insistence that since he had a .000% BAC, he should not have been arrested for DUI. Although Mr. Leibin's indignation at being arrested is certainly understandable, claims of false arrest cannot be premised on this type of hindsight. *See, e.g.*, *Martin v. Rodriguez*, 154 F. Supp. 2d 306, 312 (D. Conn. 2001) ("Ultimate dismissal of the charges against an arrestee does not indicate that the arrest was made without probable cause."); *see also Otero*, 59 Fed. Appx. at 410-11 (no constitutional violation when driver arrested for driving under the influence was later found not to be impaired by drugs and/or alcohol); *Newby*, 25 F. Supp. 2d at 58 (no constitutional violation even though plaintiff passed two

breathalyzer tests). Rather, probable cause claims are evaluated on the basis of what the officer on the scene reasonably perceived and what a reasonable person would think was *probable*. *See Walczyk v. Rio*, 496 F.3d 139, 156-57 (2d Cir. 2007) ("While probable cause requires more than a mere suspicion of wrongdoing, its focus is on probabilities, not hard certainties. In assessing probabilities, a judicial officer must look to the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.") (citations and quotation marks omitted). Here, as explained above and in light of the totality of circumstances, it was reasonable for Officer Cruz to suspect that Mr. Leibin was driving under the influence of some intoxicating substance. That Officer Cruz was ultimately proved wrong does not change that totality of circumstances. *See id.* at 157 ("[P]robable cause does not demand any showing that a good-faith belief be correct or more likely true than false. It requires only such facts as make wrongdoing . . . probable."); *Otero*, 59 Fed. Appx. at 412 ("[A]t issue is whether there was probable cause to arrest and charge Plaintiff with the crimes, not whether there was an actual violation of the same.") (citation omitted).

Moreover, *even if* Officer Cruz did not have probable cause to arrest Mr. Leibin for driving under the influence – and the Court believes that he did – the Defendants would still be entitled to summary judgment, for Officer Cruz certainly had probable cause to arrest Mr. Leibin for the other charged offense: his failure to drive in a single lane, a violation of Conn. Gen. Stat. § 14-236. *See, State v. Lizotte*, 11 Conn. App. 11, 16-17 (1987). As the Supreme Court held in *Atwater v. City of Lago Vista*, 532 U.S. 318 (2001), the fact that this offense may not be an offense that would normally subject Mr. Leiben to arrest under Connecticut law is of no constitutional significance, so long as there was probable cause to believe that the offense had been committed. *See id.* at 354 ("If

an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence" – here, the failure to wear a seatbelt – "he may, without violating the Fourth Amendment, arrest the offender."); *Virginia v. Moore*, 553 U.S. 164, 176 (2008) (same, even though state law *prohibited* the officer from arresting those who committed minor traffic infractions); *Arkansas v. Sullivan*, 532 U.S. 769, 771 (2001) (permissible for an officer to arrest a driver for speeding); *cf. Devenpeck*, 543 U.S. at 154.

Since the undisputed facts establish that Officer Cruz had probable cause to arrest Mr. Leibin, Defendants are entitled to summary judgment on Count One – the claim of false arrest.[6] *See Finigan*, 574 F.3d at 63-64; *Weyant*, 101 F.3d at 852; *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) ("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause."). Further, since Mr. Leibin's arrest was supported by probable cause, Mr. Leibin has suffered no constitutional injury upon which he can hold the municipality liable, no matter the deficiencies (if any) in its training of law enforcement officers. *See Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam) ("[N]either *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978), nor any other of our cases authorizes the award of damages against a municipal

---

[6] Finally, even if there was not probable cause to believe that Mr. Leibin had either been driving under the influence or had failed to drive in a single lane, Defendants would still be entitled to summary judgment on the basis of qualified immunity, for the undisputed facts establish "arguable probable cause" of either or both charged offenses. *See Finigan*, 574 F.3d at 61 (qualified immunity on the basis of "arguable probable cause" is warranted if "it was objectively reasonable to believe that probable cause existed" or if "officers of reasonable competence could disagree on whether the probable cause test was met") (citation and quotation marks omitted). A finding of qualified immunity on Count One would not necessarily entitle the municipal defendant to summary judgment on the *Monell* claim. *See Curley*, 268 F.3d at 71; *Barrett v. Orange County Hum. Rights Comm'n*, 194 F.3d 341, 350 (2d Cir. 1999). While the Court does not reach the issue of whether Mr. Leibin could sustain a *Monell* claim, the Court is skeptical, at least on the basis of the evidence submitted thus far. Mr. Leibin seems to argue that the training program must have been deficient because of what happened to him. However, such post-hoc reasoning is wholly inadequate to support a failure-

corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm."); *Curley*, 268 F.3d at 71 ("Following *Heller*, we have recognized that a municipality cannot be liable for inadequate training or supervision when the officers involved in making an arrest did not violate the plaintiff's constitutional rights." (citing *Amato v. City of Saratoga Springs*, 170 F.3d 311, 320 (2d Cir. 1999)). Accordingly, the Town of Avon is entitled to summary judgment on Count Three. *See id.*

### IV.

For the foregoing reasons, Defendants' Motion for Summary Judgment [doc. # 49] is GRANTED as to Count One and Count Three. Because the Court has granted summary judgment on all of Mr. Leibin's federal claims, the Court declines to exercise supplemental jurisdiction over his state law claims. *See* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim if . . . the district court has dismissed all claims over which it has original jurisdiction."). As this Court has previously stated, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the [supplemental] jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." *Hernandez v. Carbone*, 567 F. Supp. 2d 320, 333-34 (D. Conn. 2008) (quoting *Valencia ex rel. Franco v. Lee,* 316 F.3d 299, 305 (2d Cir. 2003)). Therefore, the Court declines supplemental jurisdiction over the remaining state-law claims – Counts Two and Four – which are DISMISSED without prejudice to re-filing in state court. **The Clerk shall enter judgment and close this file.**

---

to-train claim. *See Jenkins v. City of New York*, 478 F.3d 76, 94-95 (2d Cir. 2007).

IT IS SO ORDERED.


/s/ Mark R. Kravitz
United States District Judge


**Dated at New Haven, Connecticut:  August 4, 2010.**